# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# WESTERN DIVISION

JASON B. COPPOCK                                                                              PLAINTIFF

v.                                 4:17CV00662-BSM-JTK

TIM RYALS, et al.                                                       DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

    1.     Why the record made before the Magistrate Judge is inadequate.

    2.     Why the evidence proffered at the hearing before the District Judge (if such

a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## I.    Introduction

Plaintiff Jason Coppock is an inmate incarcerated at the Faulkner County Detention Center (Jail), who filed this pro se action pursuant to 42 U.S.C. § 1983, alleging numerous constitutional violations. (Doc. No. 2)

This matter is before the Court on Defendants' Motion for Summary Judgment, Brief in Support, and Statement of Facts (Doc. Nos. 35-37). Plaintiff failed to respond, and by Order dated August 10, 2018, this Court cautioned Plaintiff that his failure to respond to the Motion within fifteen days of the date of the Order would result in either all the facts set forth in the Motion being deemed admitted by him, or dismissal of the action,

without prejudice, for failure to prosecute (Doc. No. 38). As of this date, Plaintiff has not responded to the Motion.

By Order dated September 7, 2018, the Court directed Defendants to supplement their Motion, within ten days, to include information about the Jail policy governing the placement of detainees into protective custody. (Doc. No. 39) The Court also provided Plaintiff the opportunity to respond to the supplement ten days after the filing. (Id.) Defendants filed a Supplemental Summary Judgment Motion on September 13, 2018, and as of this date, Plaintiff has not responded. (Doc. No. 40)

## II.     Complaint

Plaintiff alleged he was booked into the Jail on April 16, 2017, and that Jail staff were aware that he should be placed in protective custody because he was charged with a sex offense. (Doc. No. 2, pp. 4-5) However, Defendant Smith purposefully placed him in a general population area (pod) of the Jail, despite Plaintiff's inquiry if the area was for protective custody inmates. (Id., p. 5) The inmates in the area were aware of his charges and immediately confronted Plaintiff and attacked him, causing his ear to bleed and loss of hearing. (Id., p. 6) Officers removed Plaintiff from the pod to a protective custody area of the Jail within five minutes of his placement in the original pod. (Id.) Jail staff refused to take him to the hospital to be treated. (Id.) Plaintiff claimed his records indicated his need for protective custody and Jailers failed to abide by policies providing for placement of sex offenders in protective custody. (Id., p. 7)

Plaintiff also claimed Jail personnel, including Defendant Stewart, refused to

treat him for his injuries and denied him psychological treatment. (Id., p. 10) He alleged other improper conditions, such as overcrowded cells, molded showers, and cold food. (Id., pp. 11-13)

### III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

In addition, "[a]ll material facts set forth in the statement (of undisputed material facts) filed by the moving party...shall be deemed admitted unless controverted by the statement filed by the non-moving party...." Local Rule 56.1, Rules of the United States

District Court for the Eastern and Western Districts of Arkansas. Failure to properly support or address the moving party's assertion of fact can result in the fact considered as undisputed for purposes of the motion. FED.R.CIV.P. 56(e)(2).

### A. Official Capacity Liability

The Court agrees with Defendants that Plaintiff's monetary claims against them in their official capacities should be dismissed. A suit against a county official in his official capacity is the equivalent of a suit against the county itself. Liebe v. Norton, 157 F.3d 574, 578-9 (8th Cir. 1998). In order for a county to be held liable for the unconstitutional acts of its officials, Plaintiff must allege and prove that a written county policy or pattern of widespread unconstitutional conduct was the moving force behind the unconstitutional actions. Jane Doe A v. Special School District of St. Louis County, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff did not allege that Jail policies or customs were the moving force behind his attack, lack of medical care, and other allegedly improper conditions. In fact, the Jail provided proof of numerous policies which govern sick call and medical care, grievances, protective custody and safe housing, food services, and housing and sanitation. (Doc. No. 37-7) Therefore, the Court finds that the monetary claims against Defendants in their official capacities should be dismissed.

### B. Respondeat Superior Liability

Supervisor liability is limited in § 1983 actions, and a supervisor cannot be held liable on a theory of respondeat superior for his or her employee's allegedly unconstitutional actions. See White v. Holmes, 21 F.3d 277, 280 (8th Cir. 1994). A

supervisor incurs liability only when personally involved in the constitutional violation or when the corrective inaction constitutes deliberate indifference toward the violation. Choate v. Lockhart, 7 F.3d 1370, 1376 (8th Cir. 1993). In particular, the plaintiff must show that the supervisor knew about the conduct and facilitated it, approved it, condone it, or turned a blind eye to it. Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). See also Otey v. Marshall, 121 F.3d 1150, 1155 (8th Cir. 1997) ("Section 1983 liability cannot attach to a supervisor merely because a subordinate violated someone's constitutional rights.")

In this case, the Court agrees with Defendants that Plaintiff failed to allege any knowledge or personal involvement by Defendant Sheriff Tim Ryals to establish personal liability. The general responsibility for supervising a Jail is not sufficient to establish such personal involvement, and therefore, he should be dismissed. See Reynolds v. Dormire, 636 F.3d 976, 981 (8th Cir. 2011).

**C.    Individual Capacity Liability - Qualified Immunity**

Defendants ask this Court to grant them qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on

summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified immunity only if no reasonable fact finder could answer both questions in the affirmative. Nelson v. Correctional Medical Services, 583 F.3d 522, 528 (8th Cir. 2009).

### 1) Failure to Protect

Defendants state this claim fails as a matter of law, because Plaintiff cannot prove that they knew his placement in the general population area of the Jail posed a substantial risk of serious harm, and that Defendants disregarded or were deliberately indifferent to that risk. According to the incident reports of Defendant Smith and Officers Ward and Stubbe, on April 17, 2017,[2] Ward heard beating coming from a cell and observed blood

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Nelson, 583 F.3d at 528 (quoting Pearson v. Callahan, 555 U.S. at 236).

[2] Two incident reports list the date of the incident as April 17, 2017, while another lists it as April 18, 2017.

running down the side of Plaintiff's face. (Doc. No. 37-5, p.1) Ward immediately removed Plaintiff from the cell, escorted him to the booking area, and asked who struck him. (Id.) Plaintiff physically identified his attacker, who confessed to the attack and was moved to another cell. (Id.) Officers also moved Plaintiff to a different cell. (Id.) Defendant Smith was present in the control area of the Jail when Ward removed Plaintiff from the cell, and when he asked Plaintiff what happened, Plaintiff stated that detainees surrounded him, asked him why he was in Jail, and forced the charge information out of his hands. (Id., p. 3) Other detainees then taunted him, called him names, and one struck him several times in the head. (Id.) Stubbe reported that he was passing out medications when he heard the commotion and noticed Plaintiff bleeding from the ear. (Id.) Plaintiff told him the inmates didn't like what he was in the Jail for, and Plaintiff refused medical attention and signed a medical waiver. (Id.)

Chris Riedmueller, Jail Administrator, stated in an affidavit that detainees are provided protective custody when they are known to have enemies within the Jail, and/or charged with violent crimes such as rape, assault, or involving children or the elderly. (Doc. No. 37, p. 3)[3] In addition, detainees are responsible for informing staff of their needs and any problems they experience. (Id., p. 2) In a second affidavit (Doc. No. 40-1), Riedmueller stated that when Plaintiff was booked into the Jail, he was taken to a holding cell until his first appearance hearing. After that hearing, he was classified as 4E (maximum security-

---

[3] According to Plaintiff's booking information, he was charged with distribution and possession of child pornography.

general population) by the classification officer, who reviews an inmate's criminal history, institutional history and other observations before classifying. (Id.) Protective custody requests are reviewed by a classification board, and an inmate with a sexually-related offense does not automatically require protective custody unless he/she is known to have enemies within the Jail or is charged with a violent crime. (Id., p. 2) Riedmueller further stated that typically inmates are not aware of others' charges unless they are told by the inmate himself. (Id.)

Based on these reports, Defendants state Plaintiff provided no proof that they placed him in conditions which posed a substantial risk of serious harm and were aware of facts from which an inference could be drawn that Plaintiff faced a substantial risk of serious harm. Furthermore, according to the incident report, Plaintiff was the source of the information about his criminal charges, and immediately after the incident occurred, he was removed from any further risks of harm.

Since Plaintiff was a pretrial detainee at the time of his incarceration, the due process standard of the Fourteenth Amendment applies to determine the constitutionality of his conditions of confinement. Bell v. Wolfish, 441 U.S. 520, 535 (1979). In the Eighth Circuit, however, the standards applied to such claims are the same as those applied to Eighth Amendment claims. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). Therefore, in order to support an Eighth Amendment claim for relief, Plaintiff must allege and prove that he was incarcerated under conditions posing a substantial risk of serious harm, and that Defendant recklessly disregarded that risk. Jackson v. Everett,

140 F.3d 1149, 1151-1152 (8th Cir. 1998).

In this case, Jail classification policy provides that special consideration should be given to separating "sex offenders, escape risks, suicide risks and the detainee who presents a threat to himself, other detainees or employees." (Doc. No. 40-3, p. 1) Plaintiff's booking sheet indicated that he was charged with distribution of child pornography. Although Plaintiff alleged that Jailers were aware that he was charged with a "sex offense" and was required to be placed in protective custody (Doc. No. 2, p. 5), Plaintiff did not allege that he specifically spoke with the intake or classification officers about a need to be protected. He also did not allege that he told any of the Defendants that he feared harm from any of the other inmates. Instead, the incident reports indicate that Plaintiff was the source of his charge information to his fellow inmates, albeit unwillingly, and he provided no evidence that any of the Defendants were aware of a substantial risk of serious harm to him when he was initially placed into the cell. In addition, the evidence showed that as soon as the incident occurred, Plaintiff was moved to protective custody, where he did not encounter any other threats of harm. At the most, the Court finds that someone may have been negligent in failing to initially place Plaintiff into a protective custody situation, given Plaintiff's allegations and the Jail policy. However, "[a]n official's negligence alone is insufficient to meet the subjective component because 'the official must recklessly disregard a known, excessive risk of serious harm to the inmate.'" Davis v. Oregon County, Missouri, 607 F.3d 543, 549 (8th Cir. 2010 (quoting Norman v. Schuetzle, 585 F.3d 1097, 1104 (8th Cir. 2009)). And, a

failure to follow a governmental procedure or policy does not support a constitutional claim for relief. "[T]he mere violation of a state law or rule does not constitute a federal due process violation." Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1992).

Therefore, absent a response from Plaintiff and additional evidence of culpability by Defendants, the Court finds as a matter of law that Defendants were not made aware of a risk of harm to the Plaintiff and did not recklessly disregard any risk. No reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

### 2) Deliberate indifference - medical care

Defendants also state Plaintiff cannot provide any proof that they deliberately disregarded his serious medical needs. According to the affidavit of Dr. Garry Stewart, Plaintiff did not seek medical treatment for the injuries he sustained on April 17, 2017 (Doc. No. 37-9, p. 2) In addition, Plaintiff did not enter the Jail with a formal diagnosis of a psychological illness, and in April, 2018, he was referred to Counseling Associates, Inc., to undergo psychological and/or forensic evaluation. (Id., Doc. No. 37-4) According to a sworn document submitted by Defendants, a search of the available medical records at the Jail resulted in no records being found for Plaintiff. (Doc. No. 37-4) In addition, Officer Stubbe stated in his incident report that Plaintiff refused medical attention and signed a medical waiver form (Doc. No. 37-5, p. 2)

To support an Eighth Amendment deliberate indifference claim, Plaintiff must

11

allege and prove that Defendants acted with deliberate indifference to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). An allegation of negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d at 502 (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). Finally, "a general responsibility for supervising the operations of a prison is insufficient to establish the personal involvement required to support liability." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). A prison official who is "not involved in treatment decisions made by the medical unit's staff and 'lacked medical expertise,...cannot be liable for the medical staff's diagnostic decision[s].'" Keeper v. King, 130 F.3d 1309, 1314 (8th Cir. 1997) (quoting Camberos, 73 F.3d at 176). "[I]f any claim of medical indifference ... is to succeed, it must be brought against the individual directly responsible for [plaintiff's] medical care." Kulow v. Nix, 28 F.3d 855, 859 (8th Cir. 1994) (quoting Brown

v. Wallace, 957 F.2d 564, 566 (8th Cir. 1992)).

Absent a response or additional information/allegations from the Plaintiff, the Court finds no evidence that Defendants acted with deliberate indifference to Plaintiff's serious medical needs. Therefore, no reasonable fact finder could find that the facts as alleged or shown, construed in the light most favorable to Plaintiff, establish a violation of a constitutional or statutory right.

### 3) Conditions of Confinement

Plaintiff alleged overcrowding, molded showers, and an inappropriate diet. Defendants provided evidence by policies and affidavit that the Jail showers are cleaned regularly by ACT 309 inmates, that all inmates are provided with cleaning supplies, and that the Jail was inspected twice by the Arkansas Criminal Detention Facilities Review Committee, with no findings of mold. (Doc. No. 37-1, p. 2) In addition, all inmates are given mats, whether they sleep on the floor or a bunk. (Id) Detainees are offered three meals per day in sufficient quantities to provide an adequately balanced diet, and menus for meals are reviewed by a registered or certified dietician. (Id., p. 5; Doc. No. 37-8).

"Under the Fourteenth Amendment, pretrial detainees are entitled to 'at least as great' protection as that afforded convicted prisoners under the Eighth Amendment." Owens v. Scott County Jail, 328 F.3d 1026 (8th Cir. 2003) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983)). "[I]nmates are entitled to reasonably adequate sanitation, personal hygiene, and laundry privileges, particularly over a lengthy course of

time." Howard v. Adkison, 887 F.2d 134, 137 (8th Cir. 1989). Conditions which "deprive inmates of the minimal civilized measure of life's necessities," may be considered cruel and unusual, and therefore, unconstitutional. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). In determining when pretrial detention is considered unconstitutionally punitive, the courts apply the Eighth Amendment deliberate indifference standard, focusing on the length of exposure to unsanitary conditions and the degree to which the conditions are unsanitary. Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). "Conditions of confinement, however, constitute cruel and unusual punishment 'only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise.'" Id., (quoting Wilson v. Seiter, 501 U.S. 294, 304 (1991)).

In this case, Plaintiff's allegations, absent a response and additional evidence, fail to support a finding that he was deprived of a single identifiable human need, or that he was deprived of the "minimal civilized measure of life's necessities." See Rhodes, 452 U.S. at 347. Therefore, the Court finds as a matter of law that Plaintiff fails to support a claim of unconstitutional conditions of confinement.

**IV.    Conclusion**

IT IS, THEREFORE, RECOMMENDED that: Defendants' Motion and Supplemental Motion for Summary Judgment (Doc. Nos. 35, 40) be GRANTED, and Plaintiff's Complaint against Defendants be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 25th day of September, 2018.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE